VAN MOURIK *v.* FIRST NATIONAL BANK IN MT. CLEMENS.

1. Mortgages—Blanks—Finding of Court.
   In suit to cancel a mortgage, given to a bank, and set aside a foreclosure sale and sheriff's deed because alleged to have been executed in blank, findings of court that it was not a blank mortgage at time it was sworn to and that it was valid and given for a valid consideration *held,* supported by evidence.

2. Appeal and Error—Chancery Cases Heard De Novo.
   Supreme Court hears chancery cases *de novo* and will not reverse decrees of lower court unless persuaded they are not in accordance with the just rights of the parties.

Appeal from St. Clair; Robertson (William), J. Submitted June 4, 1936. (Docket No. 63, Calendar No. 38,889.) Decided September 2, 1936.

Bill by Henry Van Mourik and wife against First National Bank in Mt. Clemens to cancel a mortgage

and set aside a foreclosure sale and sheriff's deed. From decree dismissing bill, plaintiffs appeal. Affirmed.

*Victor H. DeBaeke (Alfred Lindbloom,* of counsel), for plaintiffs.

*George W.* and *Clifford A. John,* for defendant.

BUSHNELL, J. This is an appeal from decree dismissing plaintiffs' bill to cancel a real estate mortgage and to set aside a foreclosure sale and sheriff's deed.

Plaintiff applied to the bank for a loan of $2,000 and offered as security a lake lot and cottage owned by himself and his wife by the entireties. The Van Mouriks claim to have executed a blank mortgage and note, after having been informed that it was necessary to do so and that if the loan was not granted the bank would cancel and destroy the mortgage. Appellants say the loan was refused and when the return of the executed blank instruments was demanded, they were told the papers would be returned with their cancelled vouchers and bank statement. Due to business reverses, Van Mourik's bank account was being carried in the name of his daughter, Wilhelmina Van Mourik, but her father's signature was honored on checks. The mortgage was not returned and plaintiffs say their first knowledge of its actual existence was several years later when some one informed them that a mortgage foreclosure notice was posted upon the property.

Appellee says that the mortgage papers were complete when delivered to it; that the appraisal of the property resulted in a loan of $1,550, which was acceptable to the mortgagors and that $1,550

was credited to Wilhelmina's account on March 21, 1932. The bank claims that when the loan was arranged, the balance in the bank account was only $10.55 and plaintiff was permitted to draw on the account in a total sum not to exceed the amount of the agreed loan. The bank records show that all of the money was used and Van Mourik admitted it was withdrawn on checks which he signed, a considerable part apparently being used to complete the land contract payments and to pay delinquent taxes. The mortgage was executed before a notary public on December 9, 1931, and was recorded April 4, 1932. The notary testified that the executed paper did not have the blank spaces filled in at the time of its acknowledgment.

Plaintiff's explanation of his unusual dealings with the bank is that it was common practice for him to overdraw in substantial amounts and that he always figured he would be able to obtain money with which to replenish the account; that the loan was requested to enable Mrs. Van Mourik to open a restraurant in order to help support the family. Van Mourik says his troubled business affairs finally resulted in an indebtedness to the bank in the sum of $5,300 and a trust mortgage to the bank all of which finally culminated in the closing of his boat equipment manufacturing plant.

The irregular nature of the transaction is explained by the bank's cashier as being due to the unusual business conditions existing at the time; that Van Mourik was trying to save his business and the bank was endeavoring to help, because of his already large indebtedness to it. The bank insists that the mortgage was arranged in order to provide more funds for Van Mourik's tottering business.

Appellants say "there is really only one issue involved in this case and that is whether the mortgage and mortgage note were executed in blank." This statement in plaintiffs' brief leaves nothing to be determined but a question of fact. The notary was positive that he acknowledged plaintiffs' signatures to a printed mortgage form, whose spaces were not filled in at the time. Van Mourik's employee, McKeague, testified that he was instructed to ask the bank to return the papers. Plaintiffs both say under oath that they signed a blank paper which they acknowledged before a notary. The cashier of the bank insists that the mortgage was complete in its particulars when delivered to the bank. The court found "that the mortgage in question was not a blank mortgage at the time it was sworn to before the notary public and that in fact it is a valid mortgage given for a valid consideration."

Appellant argues that we should be persuaded by the indefinite character of the testimony of cashier Walters and the fact that he stated what was his custom in such matters, rather than his actual recollection of the details of the transaction. There are some phases of the case that speak louder than the actual words of the witnesses. Van Mourik was already indebted to the bank in a large sum as evidenced by his promissory note of November 4, 1931, for $5,350. It is unreasonable to suppose that defendant bank, which operated so conservatively that it escaped receivership when the most of Michigan banks closed, would permit overdrawals by plaintiff without security.

The testimony of Mr. Walters was not positive, but its lack of certainty as to details speaks much for its honesty of purpose. It would have been

fairly simple for him to have stated facts with more exactness had he been less mindful of his oath. Courts are aware of the quality of this kind of testimony.

If Notary Gonte is to be believed, he violated his duty as an officer of the State and we are not impressed by such testimony. If the bank intended to take an undue advantage of plaintiffs, it is doubtful if it would have credited the account with the amount of the mortgage. Plaintiffs' claim that the $1,550 was merely an overdraft and intended by the parties to constitute a debt to the bank is rather a strain upon the imagination.

A review of the testimony does not raise sufficient doubt of the propriety of the trial court's findings to warrant reversal.

"It is not the policy of this court to reverse decrees unless convinced that they are unfair and inequitable. In *Moore* v. *Moore,* 231 Mich. 209, at 210, Justice Fellows said:

" ' 'We hear chancery cases *de novo;* but we do not, and should not, reverse decrees unless we are persuaded they are not in accordance with the just rights of the parties.' " *Van Nest* v. *Van Nest,* 266 Mich. 34.

The decree is affirmed, with costs.

NORTH, C. J., and FEAD, WIEST, BUTZEL, SHARPE, and TOY, JJ., concurred. POTTER, J., did not sit.